United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 00-0006 WHA |
| Plaintiff, | |
| v. | **ORDER RE *AMELINE* REMAND** |
| PHONGSOON DEJANU, | |
| Defendant. | |

     This order addresses the Ninth Circuit's *Ameline* remand. The Court thanks Ms. Karen L. Landau for her defense memorandum. Because the 110-month sentence is higher than might be expected for a 66-year old defendant, the Court has now reviewed considerable material from the 2003 sentencing proceeding. In re-reading the 2003 sentencing transcript, however, it all came back in memory. The severity of the sentence was justified by defendant's flight before trial and his perjury at trial — over and above his basic multi-count financial fraud. That the sentence (110 months) was well above the low end of the guideline range (97 to 121 months) shows that the Court sentenced higher than mandated by the guidelines themselves. Put differently, even if the guidelines had been treated as advisory only, the 110-month sentence was indicated by sentencing considerations beyond the guidelines themselves, namely the basic sentencing statute (18 U.S.C. 3553).

     At the 2003 sentencing, the Court expressly considered defendant's age. The Court was not required to consider the cited recidivist rates. The relevance of the cited data on white-collar crime is doubtful. At all events, at sentencing, the Court assumed that Mr. Dejanu,

at his age, would likely stay out of future trouble. Where white-collar crime is concerned, it is important to consider general deterrence, *i.e.*, to send a message to others similarly situated so that they will think twice before committing similar crimes. This is because white-collar offenders are usually first-time offenders who will not likely relapse. To deter the crime in the first place, a stiff prison sentence is in order for those who get caught.

Mr. Dejanu's present health, of course, could not have been known at the time of sentencing, in 2003. It therefore is irrelevant to the question before the Court: whether, had the guidelines been understood as advisory, a different sentence would have been imposed *at the time of the sentencing*. In any event, it is unlikely that counsel's allusions to high blood pressure (and the under-seal medical records) would ever persuade the Court to impose a lower sentence.

That Mr. Dejanu spent time at the North County facility in Oakland was due to his attempted flight from the jurisdiction on the day of trial and recapture weeks later. He brought this on himself. Anyway, this is a weak argument even at face value.

It may be true that Mr. Dejanu's criminal conduct had a severe negative report on his family — but they testified *against* him at trial. The harm Mr. Dejanu did to his own family counts against him, not for him. It was adequately taken into account in 2003.

It is true that the re-bounding economy eventually bailed out one fraud scheme and, surprisingly, the bank recovered its loan without loss. But the *intended* loss is what mattered. At the time in question, Mr. Dejanu had no reasonable expectation that the bank would be made whole. As to the $1.5 million bankruptcy fraud, moreover, the intent to defraud was blatantly manifest.

Had the judge been the prosecutor, Mr. Tangtrongsakdi might have been prosecuted, but clearly Mr. Dejanu was the most culpable. There was no untoward disparity in sentencing. This is not persuasive.

The Court now rules that it would not have imposed a materially different sentence had it known in 2003 that the guidelines were advisory only. In making this ruling, the Court has considered the evidence in the record, the written views of counsel, the advisory guidelines, and

all the factors provided in 18 U.S.C. 3553(a).  The sentence of 110 months will stand without further proceedings.

**IT IS SO ORDERED.**

Dated:  June 12, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

3